## Scharff *versus* Keener and Mull.

1. Land was devised to D. for life, and after her death to H. S., after the death of D., being in possession of the land, brought an action of trespass q. c. f. He and his predecessor in title had held possession fifteen years, and from shortly after the death of D. A deed of the premises, forty-two years old, reciting that the grantors were heirs of H., produced from the custody of S., was evidence both of execution and pedigree recited in it.

2. Recitals in ancient deeds are evidence of pedigree.

3. Paxton *v.* Price, 1 Yeates 500, Bowser *v.* Cravener, 6 P. F. Smith 132, remarked on.

March 7th 1870.    Before Thompson, C. J., Agnew and Sharswood, JJ.    Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1870, No. 340.

This was an action of trespass q. c. f. brought May 13th 1865, by Anthony Scharff against John Keener and George Mull. The defendants pleaded " *liberum tenementum.*"

On the trial, January 25th 1870, before Woodward, P. J., the plaintiff gave in evidence the will of John Hopp, proved March 4th, 1799, by which he devised ; "to my daughter, Dorothea Schneider, the land whereupon I have lived in my time, * * * after her death all shall come to the heirs of Johannes Hopp, Jr." There was evidence that Dorothea occupied the *locum in quo,* as far back as the recollection of old witnesses would go, which was almost to the death of her father. She was taken to the poor-house towards the close of her life. The directors of the poor-house rented the property. She died at the poor-house about

1850 or 1851 at the age of about 105 years. The plaintiff gave in evidence a warrant to himself, dated January 20th 1868, for 187 acres, interest to commence January 20th 1804, survey January 23d, and patent February 12th.

Peter Scholl testified that his father had purchased two shares of the property, and that he (witness) had got to be owner of the premises about 1852, and leased the property a year or two afterwards.

The plaintiff then offered in evidence a deed dated April 30th 1827, from Philip Hopp of Virginia to Peter Scholl of Bucks county, Pennsylvania, for a tract of land "left to him (Hopp) by his grandfather Johannes Hopp, laying in Schuylkill county, Pennsylvania, now occupied by widow Schneider." The deed further recited : "It is understood the will which entitled said Philip Hopp to a share in the above estate was made by his grandfather, Johannes Hopp, the 24th day of March 1795, and proved on the 4th day of March, at the Register's office in Reading, A. D. 1799."

The evidence was rejected, the court saying :—"There is no proof that the releasors in this deed were the heirs of John Hopp, Jr., and the proof already given shows that no possession was had under the deed for any period exceeding fifteen years before suit brought."

The plaintiff then offered to prove by Peter Scholl, son of the grantor in the deed, that his father was told before and at the time of his purchase, by the grantors and others that they were the heirs of John Hopp, Jr., deceased. This offer was rejected. Bills of exceptions were sealed. The plaintiffs gave in evidence conveyances vesting the title of Scholl in him. He also gave evidence of his possession and of the trespass by the defendants.

The defendants gave evidence, warrant and survey in March 1830 to John Koebel, which it was agreed, covered the land in controversy, and traced the title of Koebel to themselves.

The jury, under the instruction of the court, found for the defendants.

The plaintiff took a writ of error. He assigned for error the rejection of his offers of evidence.

J. S. Livingood and J. Hoffman, for plaintiff in error.—The deed was over thirty years old, produced from the proper custody, free from imperfections on its face and was admissible : 1 Greenl. Ev. § 21, p. 144; McReynolds v. Longenberger, 7 P. F. Smith 13.

J. Ralston, A. S. Sassaman and E. H. Shearer, for defendants in error.—Antiquity of the instrument and possession are necessary to take it out of the rule requiring the production of the subscribing witnesses : Law v. Mumma, 7 Wright 274; McRey-

[Scharff *v.* Keener.]

nolds *v.* Longenberger, *supra;* Shaller *v.* Brand, 6 Binney 439; Bowser *v.* Cravener, 6 P. F. Smith 132; 1 Greenl. Ev. sect. 104. Scholl was a stranger in blood and affinity to Hopp and his declarations were not evidence of pedigree: 13 Vesey 140.

The opinion of the court was delivered, March 21st 1870, by

Agnew, J.—The learned judge in the court below rejected the deed from Philip Hopp and wife to Peter Scholl on the ground that there was no proof that the grantors were the heirs of John Hopp, Jr., and because there had been only fifteen years' possession under the deed. We think this was an error. The deed was dated April 30th 1827 and was over forty-two years old at the time of trial. It recited that John Hopp was the grandfather of Philip Hopp, and that Philip was entitled to the estate under the will of his grandfather John, dated the 24th of March 1795, and proved the 4th of March 1799. This will has been given in evidence by which it appeared that John Hopp had devised the land in controversy to his daughter Dorothea Schneider for life and after her death to the heirs of his son John Hopp, Jr. Dorothea lived far beyond the ordinary term of human life, and until the distinct evidence of pedigree must have ceased to exist, having died about the year 1850, at the great age of one hundred and five years. During all the time after her father's death she continued to own and occupy the land by herself or tenants, and after her death, possession was taken by parties claiming under the deed of 1827 referred to, and the plaintiff was in actual possession when this suit was brought against a trespasser, claiming by adverse title. Under these circumstances the deed was evidence, both of the execution of it, and the pedigree recited in it. It was over thirty years old and came from the proper custody; the life-tennancy possession was consistent with the estate in remainder, and in privity with it, the actual possession taken at the earliest moment after the expiration of the life estate, and held by the party entitled to the possession, while the defendants were strangers to the plaintiff's line of title. It is therefore not easy to perceive why the usually accurate President Judge rejected the deed. His chief reason seems to be that he thought this was no evidence of pedigree. But in this the learned judge erred. That recitals in ancient deeds are evidence of pedigree is undoubtedly the law of this state. It was so held in Paxton *v.* Price, 1 Yeates 500, and Morris's Lessee *v.* Vanderen, 1 Dallas 67. The question arose again in Murphy *v.* Lloyd, 3 Wharton 538, and the deed was excluded only on the ground that the grantor in it was not shown to have had any connection with the land, possession or otherwise, previous to the date of the deed. But Bowser *v.* Cravener, decided in 1867, 6 P. F. Smith 132, may be said to run on all fours with this case, and there the same doctrine was held. In citing Paxton

[Scharff *v.* Keener.]

*v.* Price, *supra*, it is not intended to assert the principles there decided, as applicable to every case, modern in its circumstances. In that case the deed was but nine years old when it was received in evidence and the recitals held to be evidence of pedigree. It may be that in matters of very recent occurrence, where the evidence of pedigeee is easily attainable, cases may arise where the recitals in such a recent deed would not be entitled to the weight given to them in Paxton *v.* Price. But the present case is one far removed from the border line of controversy. On the point of execution, Bowser *v.* Cravener may also be referred to, and to it we may add McReynolds *v.* Longenberger, 7 P. F. Smith 13, in which the admissibility of ancient documents in evidence, is discussed at length.

Judgment reversed, and a *venire facias de novo* awarded.